The next argued case for today is number 20-23-18 in Re Singhal, Mr. Davis, when you are ready. May it please the court. Good afternoon now. The board's analysis in this case comes up short with respect to Alice's step 1 and step 2. With respect to step 1, there are a lot of similarities between this case and the TechSec case, and like the claims in TechSec. The current claims are non-abstract because they improve a basic function of a computer network, and that is security. And that improvement is done in a technological way. What is that claimed improvement, claimed advance? Well, you have a cellular wireless device that belongs to a customer in close proximity to a merchant's terminal, receives a very specific partial payment authorization transaction record from that terminal. Thereafter, after a brief authentication with the central system, the cellular wireless device to the customer transmits that specific transaction record to the central system. What does all of that do? What it does is it enables the customer to purchase goods from the merchant without having to provide the merchant with sensitive customer information like check card number or credit card number, things like that. The board, in this case, their mistake started early on. And the big issue is that they characterize the claims as merely being directed to securely processing payments. I just want to understand the technology. The main difference that you claim is that you avoid, you know, by sending information to a central server rather than to a merchant, right? That's the key? That's part of the key, Your Honor. Very specifically, what the claims say is that you have a wireless device, a cellular wireless device of a customer that's in proximity to a merchant's terminal, and that device sends the information to central system. Central system, of course, being a completely new system, a new component. Normally, historically, what would happen, of course, you'd go into a store, and you provide your credit card, and the merchant's going to contact whoever it is, the credit card company or some other entity. So you're saying it's the fact that the user or the purchaser is standing there with the cellular technology, and that technology sends the message to the central server? Well, again, that's part of it. So the advance is sort of the entire system. So the claims do require a cellular wireless device, and that's the device going to the customer. It's going to receive information from the merchant's terminal, and then it's going to pass on that specific transaction record to a central system. All that stuff, even though it's easy to understand, it's technological. You could not perform the claims without technology. Right, but is anything about the technology that you're referring to other than off-the-shelf technology? If you look at individual components, and that's exactly what the board did, individual components such as the sales terminal, that's going to be off the shelf wherever that shelf is. You have a cell phone. Certainly the programming has to be different, and there are different components to the hardware to make sure that you can receive the transaction record from a short distance. But those individual components, perhaps they are off the shelf, but it's the order combination of all the components working together. That's the key here. Let me just say, tell me what's wrong with thinking about it the following way. If you and I want to make a transaction and we want to do it through a third-party intermediary who's going to handle the taking of money from me and the sending of money to you, that third party is going to need some information of yours and some information of mine, and there are a variety of options of getting to that third party the required information. I can give you mine and then you can communicate with the third party, or you can give me yours and I can communicate with the third party. This basically says, let's do a second thing if I'm the customer and you're the merchant, and use available communication technology, Bluetooth, cellular service, whatever it is, none of which has been changed. They're all just being used as communication tools in their ordinary course to do something that I think it's fair to say Alice says, namely the use of an intermediary for handling a payment transaction is abstract because it's a familiar economic practice. Your Honor, I believe that what was happening in Alice is something that's much different than here. Alice related to intermediated settlement risk, and perhaps that is a big… The follow-on cases all talk about just the decisions about financial transactions and the routes through which they go and the information put into them creating shadow accounts in some of our successor cases, that that's all in the realm of familiar business practices. It's using an intermediary to accomplish a transaction between the two parties, and information has to be selected to allow the intermediary to do it. Why is that not all on the abstract side of the line, and then the only thing that's left here is using one rather than another of several different off-the-shelf communication mechanisms? Well, a couple of points, Your Honor. If I may, I believe that it's a bridge too far. Again, sticking with Alice and the intermediate. Intermediated settlement risk there, that is a different thing than here. With Alice at settlement risk, here you're talking about the security risk. Alice, in fact, referred to that intermediate settlement risk. The other term they used was clearinghouse. That's a much different concept than what we're dealing with here. In fact, if you look at the patent application at issue here, you can go to the figures such as, I believe it's figure 3, for example. You can see right in the figure there is an automated clearinghouse, of course. Automated clearinghouse is involved in credit card transactions, but that's not the central system that's claimed as being part of the claimed advance. Central system is item 10. The clearinghouse is item 36. This, to me, is a way that helps explain the differences between something that would be an intermediate settlement risk, slash clearinghouse, versus the combination of elements involving a wireless cellular device, central system, merchant's terminal, of the claimed invention. Just like the district court in TXAC, the board, in this case, disregarded the elements of the claims that the specification makes clear are important parts of the claimed advance in a combination of elements. Again, the board said that the claims were directed to merely securely processing payments. In order to form a proper step one directed to analysis, that depends on an accurate characterization of what the claims require, and what the patent was searched to be the claimed advance, and the board claiming to not do that here. In fact, they didn't even go beyond the first four words of the preamble. Using that broad, huge box, they took that short-term securely processing payments and said that that was a fundamental economic practice. That's not surprising. They drew the biggest box in the universe and declared it a fundamental economic practice. I can't really speculate on what the board would do if they looked at it properly, but I like to believe that if they had properly characterized the claim to actually be directed to the claimed advance, that there's no way that they would have found that to be a fundamental economic practice. At a minimum, they certainly did not establish that. In order to establish that, they would have had to establish, for example, that it's something that is long prevalent in our system of commerce. It's not enough to just say that, hey, this is an economic practice. It must be a fundamental economic practice. Can you address universal secure registry, the decision from a week or two ago? I can. Is there something specific you want to look at? Why is this case materially different from that case? I know that there are differences in specifics, but why does the analysis of that case not carry over to this case? Your Honor, thank you. I certainly anticipated that you would ask about universal secure registry. There are a few reasons. First and foremost, as in most patent cases, we start with the claims. The claims are different. They are significantly different. In universal secure registry, of course, there were four patents, so various claims. But none of the claims have the claimed advance and the improvement that I've mentioned here with respect to the cellular wireless device of the customer in proximity to the sales terminal that receives the specific record and then transmits it wirelessly to a central system. That structure is just plainly missing from universal secure registry. In fact, Your Honor, Judge Toronto, I listened to the arguments that were made in that case, and I think at the very beginning of the case, you were asking questions of appellant's counsel to get the numbers. But the first patent that's discussed in the case, and I think you quite correctly pointed out, is there anything in here that limits it to a particular environment, particular structure? And counsel had a hard time with that question. I don't have a hard time with that here because the structure is all there. All these items that we've been talking about, it's there. That is a significant difference between this situation and the situation of universal secure registry. But the significant difference, that's what I'm trying to understand. So your significant difference is the user's use of the mobile phone to generate the process? That's one part of the system. The system includes several components. You're going to need your cellular wireless device. You're going to need the sales terminal of the merchant. You're going to need the central system. But which of those was not necessary in universal secure registry? By the claims, none of them are necessary. If you look at the claim language, and I think your honors would agree, that that's what matters here. The other point that I would make with respect to universal secure registry, in reading that, some of what I read is what got my wheels spinning about the difference between intermediate and immediate settlement risk and security risk. Without rehashing it, I would point that out as well and say that what we're talking about here is that versus the settlement risk, two completely different things. It's too far of a leap to take that holding in Alice and try to apply it to a system with structure like this. On step two, the board does not provide any evidence that the ordered combination of elements beyond the allegedly abstract idea is well understood, routine, and conventional. None whatsoever. If the board did us any favors here, it's that it did identify certain limitations that it viewed as being beyond the abstract idea. I'll just accept those limitations for now. Those limitations were cellular wireless device, the servers of the central system, and the interfaces over a global computer network. They admitted this is beyond the abstract idea. Then what they did is they pointed to an area in the spec that reportedly said that each of those elements is well understood, routine, and conventional. What they didn't do was really go in and explain why the ordered combination of those elements would be well understood, routine, and conventional. It's missing completely. I would also point out that— or at least consideration of those questions. I believe a reversal is appropriate because I do think that an inventive concept exists, but short of a reversal, a remand so that the board could do its job. Yes, absolutely. Can I clarify that you're not separately addressing claims? You've got—you direct yourself really to only certain of the claims, but then there's the separate question of the claims that you don't even address in this appeal, which I think are 11 through 20? Is that right? That's correct, Your Honor. Okay. So you're really only looking at the claims 1, 8, and 9? That's the focus, Your Honor. Correct. And what depends from those? Correct. Okay. Thank you. That's correct. Okay.  We will serve you again, Mr. Davis. Thank you, Your Honor. Thank you. Okay. Ms. Capra? Good morning, Your Honors, and may it please the Court. I think we can really focus on one key issue here, and that's whether or not these claims provide sufficient specificity to constitute an improvement to computer functionality. And here, Singhal claims do not. There is no improvement to the cellular device, there is no improvement to the central computer system, and there is no improvement to the network. As appellant makes clear, the only improvement offered by the claimed invention is bypassing transmission of certain personal information to a merchant's computer system during a payment transaction. But much like the claims at issue in Alice, universal secure registry, boom payments, interval holdings, using a third-party intermediary to mitigate such information risk is an abstract idea and cannot serve as an inventive concept. Is there a problem that there wasn't really a discussion of the order combination? Your Honor, the Board did discuss the order combination. Let's see. First, I will note that the Board looked at the claim as a whole in determining whether or not the abstract idea was recited, and I think that's one issue that the appellant had during his opening. But as to the order combination at Step 2, the Board indicated that looking at the individual claim elements individually as an order combination, these limitations don't go beyond the abstract idea that they found. The cellular device, the servers, the interfaces, the global network are all used in their routine and conventional manner. And what the Board did there is look at the specification and noted how the specification described each of these components. It described each of these components as simply containing off-the-shelf technology. And so there is no inventive concept here. And furthermore, the improvement simply addresses an abstract idea. If there is any improvement here, it is to the abstract idea itself and not to any underlying technological component. And these claims are completely analogous to those that were at issue in Universal Secure Registry as well as other cases that this Court has decided, including boom payments and interval holdings. And if there are no other questions, I'll yield the rest of my time. Thank you. Mr. Davis for three minutes. That was fast. Thank you, Your Honor. The PTO here did the same thing that the Board did just now. And that is focused on individual elements. My colleague went through each of the individual major structural limitations of the claim and said that those were known essentially. With respect to Judge O'Malley's question, with respect to the order combination, I believe where my colleague was paraphrasing from is Appendix 12. And that's where the Board purportedly was addressing an order combination. But if you look at that language, it quickly becomes clear that there's no addressing the order combination. It reads, first, analyzing the claim limitations individually and as an order combination. We note, as we did above, that the limitations beyond the abstract idea include the cellular wireless device, the servers of the central system, and the interfaces over a global network. As explained above, these claimed elements appear to be used in a routine and conventional manner to implement the claim-secure payment processing system. That's it. That's talking about the individual components. And when you go back up and look above, and I can only speculate where they're talking about it, it appears to be the page before Appendix 11, that's a discussion of the individual elements. There's no discussion whatsoever of an order combination. It's just simply not there in that regard. So is it your position that they simply took those individual things that they found to be conventional and then only combined those, not combined everything else in the claim? It's my position that they took those individual things, the limitations that they admit that are beyond the abstract idea, and looked at those individual things as individuals. They had no contemplation of them as an order combination other than just simply to use the words in order combination, and that doesn't pass muster. If Your Honors don't have any other questions, I'll see you in a second. All right. Thank you. Thanks to both counsel. The case is taken under submission. And that concludes this panel's argument cases for today. All rise. Your Honor, the Court is adjourned until this afternoon at 2 o'clock p.m.